UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                    CRIMINAL ACTION

VERSUS

HENRY BABIN                                 NO.: 19-42-BAJ-RLB

## RULING AND ORDER

Before the Court is Henry Babin's **Motion to Suppress (Doc. 18)** evidence derived from the search of a "shed-like structure" he calls his home. The Court held a hearing on the motion on July 2, 2019. (Doc. 25). Counsel offered argument, and David Ferris, a special agent with the Cyber Crimes Unit of the Louisiana Bureau of Investigation, testified for the United States. (*Id.*). For the reasons that follow, the **Motion (Doc. 18)** is **DENIED**.

## I. BACKGROUND

This is a child-exploitation case. Principally at issue is whether agents exceeded the scope of a warrant authorizing the search of a "residence" when they searched a "shed-like structure" on the property but not mentioned in the warrant. The Court holds that they did not and that, in any event, the good-faith exception controls.

Henry Babin was indicted for knowingly possessing material containing images of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). (Doc. 1). The evidence against him includes images stored on electronic devices seized during the execution of a search warrant. (Doc. 4 in Case No. 3:18-MJ-011-UNA).

The warrant authorized the search of "[t]he residence located at 43420 Black Bayou Road, Gonzales, Louisiana[.]" (Doc. 1 at p. 2 in Case No. 3:18-MJ-011). It included images depicting the aerial and street views of the property. (*Id.*). It described the "residence" as a "one-story single-family dwelling with white sliding [*sic*] and a grey roof." (*Id.*). And it noted that "[a] small travel trailer is on the property next to the carport." (*Id.*). It did not mention any secondary structure located behind the main dwelling. (*Id.*).

Special Agent Ferris and others[1] executed the warrant. (Transcript of 7/2/19 Hearing at p. 20). They began by securing the main dwelling. (*Id.*). Special Agent Ferris then walked to his car, which he had parked near a tin-sided shed-like structure 30 to 50 feet behind the main dwelling. (*Id.* at pp. 21 & 33). The shed-like structure appeared to be a part of the main dwelling: it did not have a separate mailbox; it did not have an external air-conditioning unit; it was not fenced off from the main dwelling; it did not have its own water meter; and it relied on the main

---

[1] Several agencies participated: the Federal Bureau of Investigation, the Department of Homeland Security, the Louisiana Bureau of Investigation, and the Ascension Parish Sheriff's Office. (Transcript of 7/2/19 Hearing at pp. 34–35).

2

dwelling for electricity. (*Id.* at p. 26). A "no trespassing" sign, however, hung from a nearby tree.² (*Id.* at p. 45).

As he walked to his car, Special Agent Ferris saw Babin emerge from the shed-like structure. (*Id.* at p. 33). Special Agent Ferris identified himself and asked Babin if the structure was "part of the residence." (*Id.*). Babin responded that it was. (*Id.*). Special Agent Ferris next asked if the shed-like structure and the main dwelling shared an address; Babin again responded in the affirmative. (*Id.* at p. 34).

Next, Special Agent Ferris entered the structure and began to search its interior. (*Id.* at p. 45). At some point, Babin told Special Agent Ferris that the structure was his "residence."³ (*Id.*). But Special Agent Ferris continued the search, eventually discovering electronic devices containing evidence of child pornography. (*Id.*). Babin moves to suppress that evidence. (Doc. 18).

Babin contends the search violated his rights under the Fourth Amendment to the United States Constitution. (Doc. 18-1 at p. 1). He contends, in particular, that the executing agents exceeded the scope of the warrant when they entered and searched the shed-like structure. (*Id.*). He notes that the warrant did not mention the shed-like structure, and he emphasizes that the structure is his home and thus enjoys

---

² The "no trespassing" sign is analytically insignificant. The inference Babin contends it creates—that the shed-like structure is its own "unit" or "residence"—is no stronger than the common-sense inference that the shed-like structure is, in fact, a shed containing property the owner wishes to protect from theft.

³ Because Babin has not cited Fifth Circuit precedent or explained how this new information would have materially affected the United States Magistrate Judge's probable-cause determination, the Court is unpersuaded by Babin's argument that the executing agents should have discontinued the search and sought an additional warrant when they realized the shed-like structure was his "home."

3

heightened Fourth Amendment protection.[4] (*Id.*). The United States rejoins that the warrant "implicitly authorized" the search. (Doc. 20 at p. 5).

## II. DISCUSSION

The text of the Fourth Amendment imposes two requirements. *See Kentucky v. King*, 563 U.S. 452, 459 (2011). This case concerns the second one: no warrant shall issue unless it is based on probable cause and "particularly" describes the place to be searched and the persons or things to be seized. U.S. CONST. amend. IV.

The Fourth Amendment demands "practical accuracy" not "technical precision" in a warrant's description of the place to be searched. *United States v. Olinde*, 2006 WL 1049048, at *4 (5th Cir. 2006) (per curiam) (citation omitted). So the physical description does "'not limit the scope of the search to those specific areas, but instead ma[kes] the premises to be searched more readily identifiable.'" *Olinde*, 2006 1049048, at *4 (quoting *United States v. Griffin*, 827 F.2d 1108, 1115 (7th Cir. 1987), *cert. denied*, 485 U.S. 909 (1988)).

The scope of a warrant with an otherwise adequate description extends to structures that are "'ordinarily a part of [the] residential property[.]'" *Olinde*, 2006 1049048, at *4 (quoting *United States v. Earls*, 42 F.3d 1321, 1327 (10th Cir. 1994), *cert. denied*, 514 U.S. 1085 (1995). For example, the United States Court of Appeals

---

[4] In addition, Babin contends his Fourth Amendment rights were violated when law enforcement officers (1) warrantlessly searched his computer using "investigative BitTorrent software" and (2) warrantlessly obtained his IP address subscriber information. (Doc. 18-1). These contentions are foreclosed by *United States v. Weast*, 811 F.3d 743 (5th Cir. 2016), which holds that a defendant has no reasonable expectation of privacy in subscriber information he voluntarily provides to an internet service provider.

4

for the Fifth Circuit has held that a warrant authorizing the search of a residence at a particular address also authorized the search of a "detached shed" on the property but not mentioned in the warrant. *See Olinde*, 2006 1049048, at *4.

Here, the warrant authorized the search of the "residence located at 43420 Black Bayou Road, Gonzales, Louisiana 70737." (Doc. 1 at p. 2 in Case No. 3:18-MJ-011-UNA). The shed-like structure Babin describes as his "residence" was located at 43420 Black Bayou Road. (Transcript of 7/2/19 Hearing at p. 34). The shed-like structure is the "type of building that is ordinarily a part of residential property." *Olinde*, 2006 WL 1049048, at *4. It is therefore within the scope of the warrant. *See id.* Even if it were not, suppression would be unwarranted: the undisputed facts establish that the executing agents searched the shed-like structure in good faith based on the objectively reasonable belief that it was within the scope of the warrant. *See Olinde*, 2006 WL 1049048, at *4.

Babin overlooks *Olinde* and points to *United States v. Whitney*, 633 F.2d 902 (9th Cir. 1980). According to Babin, *Whitney* holds that a search warrant that applies to more than one home must particularly describe each home. (Doc. 18-1 at p. 6). So in this case, Babin contends, the warrant had to particularly describe the shed-like structure—his "home." (*Id.*). Babin is mistaken.

*Whitney* is a multi-unit-structure case: it involved the search of a building divided into two apartments. *See* 633 F.2d at 904. This is not a multi-unit-structure case; it is a case involving the search of a secondary structure—a shed—that is

ordinarily part of a single unit or residence.[5] Granted, in multi-unit-structure cases "the warrant must specify the precise unit that is the subject of the search." *United States v. Perez*, 484 F.3d 735, 741 (5th Cir. 2007). But failure to offer a unit-specific description is not fatal when, as here, "officers reasonably believe that the premises ha[s] only a single unit." *Id.* at 741 (citing *Maryland v. Garrison*, 480 U.S. 79, 85–86 (1987)). Accordingly, even if this were a multi-unit-structure case, the warrant and its execution would stand on firm constitutional ground. *See id.*

## III. CONCLUSION

Accordingly,

**IT IS ORDERED** that the **Motion to Suppress (Doc. 18)** is **DENIED**.

Baton Rouge, Louisiana, this 16th day of July, 2019.

JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

---

[5] In this case, unlike the multi-unit-structure cases, no visual cues supported the inference that the shed-like structure was a separate unit or residence. In fact, the visual cues supported the contrary inference—that the shed-like structure was part of the main dwelling. Again, the shed-like structure (1) did not have a separate mailbox, (2) did not have an external air-conditioning unit, (3) was not fenced off from the main dwelling, (4) did not have its own water meter, and (5) relied on the main dwelling for electricity. (Transcript of 7/2/19 Hearing at p. 26).